Edward L. FRETWELL, Barbara Fretwell, and Fretwell's Inc., Appellees,

v.

PROTECTION ALARM COMPANY, Appellant.

No. 66393.

Supreme Court of Oklahoma.

July 12, 1988.

Rehearing Denied Sept. 13, 1988.

W.D. Greenwood, Huckaby, Fleming, Frailey, Chaffin & Darrah, Oklahoma City, for appellant.

Tom E. Mullen, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellees.

Albert Lewis Tait, Jr., Oklahoma City, amicus curiae.

ALMA WILSON, Justice:

As a result of a burglary in August, 1984, the Fretwells sued Protection Alarm Company, which installed and maintained a burglary alarm system in the Fretwells' residence. In a negligence action the Fretwells claimed that the alarm company had failed to notify the police department of a cut in their telephone service, which is the line that carried the alarm signal; that they failed to use the house key supplied by the Fretwells to check the residence; and that they failed to call the list provided by the Fretwells of persons to be notified in the event of an alarm.

The testimony during the trial revealed that the alarm company had notified the police upon receiving the alarm signal at their monitoring station and had dispatched one of their employees to check the residence. Upon the employee's arrival, he was notified by the police officers on the scene that the residence was secure. He did not obtain the key to the residence to inspect the inside, nor did he inspect the premises and find that the line running from the residence to the alarm company had been cut, thereby prohibiting a second signal from being received. Apparently after the police and the employee left, one or more burglars entered the residence removing property valued at $91,379.93. The jury rendered a verdict in favor of the Fretwells for that amount.

The main contention of the alarm company on appeal is that the contract between Fretwell's, Inc. and the alarm company which was for the benefit of the Fretwells, limits the liability of the alarm company to fifty dollars. The two pertinent paragraphs in the contract provide:

It is agreed that Protection is not an insurer; that the payments hereinabove named are based solely on the value of the services provided for herein; that, from the nature of the services to be rendered, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure of the alarm system to properly operate or the failure of Protection to perform any of its obligations hereunder; that in case of either of such failures and resulting loss to the Subscriber, the liability of Protection shall be limited to the sum of Fifty Dollars ($50.00) or the actual loss of the Subscriber, whichever of these two figures is the lesser, as liquidated damages, and not as a penalty, and this liability shall be exclusive. If Subscriber desires Protection to assume a greater liability or responsibility than that set forth herein to either Subscriber or Subscriber's insurance carrier by way of subrogation, an additional price must be quoted.

In the event any person, not a party to this agreement, including Subscriber's insurance company, shall make any claim or file any lawsuit against Protection for any reason whatsoever, including but not limited to the installation, maintenance, operation or nonoperation of the alarm system, Subscriber agrees to indemnify, defend and hold Protection harmless from any and all claims and lawsuits including the payment of all damages, expenses, costs and attorneys fees whether these claims be based upon alleged intentional conduct, active or passive negligence, or strict or product liability, on the part of Protection, its agents, servants or employees.

The agreement in effect at the time of the burglary provided for a monthly payment of $46.00. Protection Alarm Company had furnished the alarm equipment and alarm service for the Fretwells' residence since 1974. The contract above was a renewal contract dated February 1, 1982, between Fretwells, Inc. and Protection Alarm Company, Inc., and subscribed by Edward Fretwell as president of Fretwells, Inc.

The dispositive issue in this case is the effect the contract has upon the damages allowed in the negligence action. To resolve this issue, three questions must be addressed: (1) Do the terms of the contract apply to the Fretwells, who are third-party beneficiaries and not parties to the contract? (2) Is the clause of the contract enforceable which limits the damages to fifty dollars? (3) Is the indemnity clause of the contract enforceable?

The tort, alleged by plaintiffs in this case, involved in this case is one arising out of a contractual relationship, and as such bears a close resemblance to an action for pure breach of contract. *See General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16, 22–23 (1977). A tort arising out of a contractual relationship exhibits characteristics of both tort and contract actions. *Piskor,* 381 A.2d at 23. In a contract action a breach occurs when a party fails to perform a duty arising under or imposed by agreement, whereas a tort is a violation of a duty imposed by law independent of contract. *Lewis v. Farmers Ins. Co., Inc.,* 681 P.2d 67, 69 (Okla.1983). "A common law duty to perform with care, skill, reasonable expediency, and faithfulness accompanies every contract." *Lewis,* 681 P.2d at 69.

■ It reasonably follows that since the contract established the duty, any lawful limitations in the contract may also limit the liability of the tortfeasor. Even though the Fretwells are third-party beneficiaries to the contract, the contract which established the duty to the Fretwells may also limit the liability of the promissor since the consideration for the contract was set with these limitations in the contemplation of the parties to the agreement.

We next examine whether the limitation of liability set by the burglar alarm agreement was enforceable. Although this is a case of first impression before this Court, the issue is not a new one to sister states. *See* Annot., 37 A.L.R.4th 47 (1985).

■ The Fretwells argue that the "liquidated damages" clause of the contract is unenforceable because it is either in the nature of a penalty, which is void by statute, 15 O.S. 1981, § 213, or is void based upon the facts and construction of 15 O.S. 1981, §§ 214, 215 [1] which provide that when damages for breach of a contract are determined in anticipation of a breach, such determination is void unless from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.[2] Research into cases which cite these statutes reveals that they are cases in which the promisee has attempted to set an amount for the breach of a contract by a promisor.[3] The clause in the case at bar makes no attempt to reasonably forecast just compensation for harm caused, it is clearly an attempt to limit damages. The contract wording is, "[T]he liability of Protection shall be limited to the sum of Fifty Dollars ($50.00) or the actual loss of the Subscriber, whichever of these two figures is the lesser." The Supreme Court of Minnesota reached the same conclusion under a similar contract clause in *Morgan Co. v. Minnesota Mining & Mfg. Co.,* 310 Minn. 305, 246 N.W.2d 443 (1976). Quoting from *Wedner v. Fidelity Security Systems, Inc.,* 228 Pa.Super. 67, 307 A.2d 429 (1973), the Minnesota court affirmed a trial court grant of summary judgment which limited recovery of damages to $250, which was the amount recited in the contract as "liquidated damages." As the Pennsylvania court was equally divided, the case was affirmed. Judge Watkins, writing for the

---

**1.** Title 15 O.S. 1981, §§ 213–215 have been amended by 1985 Okla. Sess. Laws, ch. 107, §§ 1–3, and are now codified in 15 O.S.Supp. 1987, §§ 213–215.

**2.** For example, in *Reed v. Auxier,* 690 P.2d 1057, 1061 (Okla.App.1984), the sellers of real property were limited by the trial court to the amount stated in a liquidated damages clause for the breach of the contract. The Court of Appeals reversed finding that damages in real estate contracts are not impracticable or extremely difficult to fix where case law construing 23 O.S. 1981, § 28 has established that the damages are the difference between the actual contract price and the actual value of the land at the time of the breach.

**3.** In *Mattes v. Baird,* 176 Okla. 282, 55 P.2d 48 (1936) this Court distinguished penalties from liquidated damages and upheld a contract providing the promisee with $1,000.00 in liquidated damages for the failure of the promisor to complete the construction of a mill. In *Massey v. Love,* 478 P.2d 948 (Okla.1970), cited by the Fretwells, the promisee was attempting to enforce a liquidated damages agreement. This Court held that the burden was upon the one seeking to recover the liquidated damages to prove that determination of actual damages would be impracticable or extremely difficult.

judges in support of affirmance, stated concerning the issue of limitation of damages:

Much reliance is placed upon the Restatement of Contracts § 339, but the appellant disregards Comment [g], which provides:

"An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto. Such a contract, or subsequent thereto, does not purport to make an estimate of the harm caused by a breach, nor is its purpose to operate in terrorem to induce performance."

It can hardly be contended that the words "liability is and shall be limited" to the yearly service charge of $312 are anything but a limitation of liability and not really a liquidated damage clause. Surely, if the loss to the customer was $150, the expressed mutual assent was that recovery should be $150 and not $312.

The fact that the words "liquidated damages" were used in the contract has little bearing on the nature of the provision. It is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to the clause by the parties "is but of slight weight, and the controlling elements are the intention of the parties and the special circumstances of the case." *Laughlin v. Baltalden, Inc.*, 191 Pa.Super. 611, 617, 159 A.2d 26, 29 (1960). The same principle applies here. Nor can it be argued that the use of these words automatically creates an ambiguity to be resolved against the appellee as the drafter of the instrument. The meaning of the words is clear—the fixed limit of liability was $312. We are, therefore, not dealing with a liquidated damage problem.

*Wedner*, 307 A.2d at 431. This section of *Wedner* was also quoted and the reasoning followed in *Central Alarm of Tucson v.*

*Ganem*, 116 Ariz. 74, 567 P.2d 1203 (Ariz. App.1977).

Provisions limiting liability and the amount of damages under burglar alarm service agreements have been upheld in the majority of jurisdictions. See cases cited in *Morgan*, 246 N.W.2d at 447, *Central Alarm of Tucson*, 567 P.2d at 1206–1207 and Annot., 37 A.L.R.4th 47, 80–84 (1985). The alarm company is not an insurer against burglary as such systems can be disabled. The contract before this Court explicitly states that the alarm company is not an insurer and offers to increase the monthly payment if insurance is desired. We conclude that the contractual provision before this Court is neither unconscionable nor against public policy. Therefore, the damages to the Fretwells is limited to fifty dollars.

■ The final question which must be examined is the enforceability of the indemnity provision. The contract provides that "Subscriber agrees to indemnify, defend and hold Protection harmless from any and all claims and lawsuits including the payment of all damages, expenses, costs and attorneys fees whether these claims be based upon ... negligence ... on the part of Protection, its agents, servants or employees." The appellees argue that the indemnity clause is unenforceable because it seeks to indemnify the appellant from its own negligence. We do not agree.

Broadly speaking, a promise of indemnity for the performance of an act not illegal, immoral, or against public policy is valid.... [I]t is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for, his own future acts of negligence provided the indemnity against such negligence is made unequivocally clear in the contract.

41 Am. Jur. 2d *Indemnity* § 9 (1968).

An indemnity agreement is a valid agreement in Oklahoma, and is governed by statute. 15 O.S. 1981, §§ 421–430. This Court will strictly construe an agreement which would have the result of indemnifying one against his own negligence, but where the

intention to do so is unequivocally clear from an examination of the contract, such an agreement is enforceable. *See Sinclair Oil and Gas v. Brown,* 333 F.2d 967 (10th Cir.1964). An examination of the contract between the appellant and Fretwell's Inc. clearly expresses an intention that the appellant be indemnified from its own negligence, and we find this agreement to be enforceable.

REVERSED and REMANDED for further proceedings consistent with this opinion.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

OPALA, J., concurs in part, dissents in part.

HODGES and SIMMS, JJ., dissent.